IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HENRY CLIFTON, JR.,
    Petitioner,

vs.                                              Case No. 4:05cv358/MMP/EMT

FLORIDA PAROLE COMMISSION, et al.,
    Respondents.
_____/

## SUPPLEMENT TO REPORT AND RECOMMENDATION

       This cause was remanded to the undersigned by the District Judge for a recommendation as to whether this habeas case should be stayed, pursuant to Petitioner's request (*see* Doc. 62), pending disposition of a civil case filed by Petitioner in a North Carolina state court against Arthur Williams, Petitioner's former parole officer in North Carolina, and the North Carolina Department of Corrections (Doc. 66). Respondent opposes the motion for stay (Doc. 69). Upon review of the parties' submission, the undersigned concludes that Petitioner's motion for stay should be denied.

       In this habeas action, Petitioner challenges the Florida Parole Commission's (Commission) revocation of his parole (*see* Doc. 20). As one of his grounds for relief, Petitioner claims the Commission's revocation of his parole violated his due process rights because it was based upon insufficient evidence, namely, the false testimony of Arthur Williams, Petitioner's probation officer when he resided in North Carolina (*see* Doc. 20 at 6, 9). As discussed in the Report and Recommendation, Petitioner presented this claim to the Florida courts in his state habeas petition (*see* Doc. 59 at 19–20). The state court reviewed the issue of whether there was sufficient evidence to revoke Petitioner's parole and determined that the record contained competent substantive evidence in support of the revocation (Doc. 27, Ex. Y at 7). In its written opinion, the state court made the following factual and legal determinations:

. . . on or about June 21, 1983, the Parole Commission granted Petitioner parole supervision until June 21, 1993.  On or about December 19, 1986, Petitioner requested that his parole supervision be transferred to North Carolina.  The Florida Parole Commission approved Petitioner's request.

On April 13, 1987, North Carolina's Department of Corrections acknowledged receipt of Petitioner's Interstate Compact parole supervision transfer, and indicated that contact with Petitioner had been initiated.  Subsequently, the transfer of Petitioner's parole supervision to North Carolina was confirmed.  On July 7, 1987, the Florida Parole Commission acknowledged the correspondence with North Carolina, and requested periodic reports on Petitioner's progress.

On or about February 8, 1988, Petitioner's North Carolina Parole Officer prepared a violation report, requesting that a warrant be issued.  A copy of the report was submitted to the Florida Parole Commission.  In the violation report, Petitioner's Parole Officer indicated that Petitioner had failed to report for his scheduled supervision visits, and was considered an absconder from supervision.

On March 4, 1988, the Parole Commission issued a Warrant for Retaking Paroled Prisoner.  The warrant charged Petitioner with the following violations of the terms and conditions of parole supervision:

> Violated Condition 2 by changing residence without first procuring the consent of his Parole Supervisor in that on or about January 14, 1988, he did leave his residence at 2321 Apartment C, gateway [sic] Apartments, Charlotte, North Carolina, and/or leave the county of his residence, absconded from supervision and his whereabouts is currently unknown to the Commission.
>
> Violated Condition 3 by failing to make a full and truthful report to his Parole Supervisor before the fifth day of each month in that he did fail to make a full and truthful report for the months of December, 1987 and January and February 1988.
> (Respondent's Exh. Q).

Petitioner remained an absconder from supervision for approximately sixteen (16) years, from the fall of 1987 to the summer of 2003, when he was arrested on July17, 2003[1] for a new crime.

---

[1] The undersigned notes that Petitioner was actually arrested on July 17, 2003 for a parole violation, not for a new crime as indicated in the state court opinion.  Petitioner had previously been convicted of the new crime of indecent liberties in 2002, and was serving a three (3) year probationary term at the time he was arrested for the parole violation

After his extradition to Florida, Petitioner was afforded notice of the violation and notice of his rights in the parole revocation proceedings.

At the final revocation hearing, Petitioner's former Parole Officer testified that Petitioner had failed to attend scheduled meetings at the probation office on June 29, 1987, July 14, 1987, and December 28, 1987.  In December 1988,[2] after Petitioner had failed to attend several scheduled meetings at the probation office, the Parole Officer went to Petitioner's approved residence to "leave a last call." (Respondent's Exh. T).  When he arrived at the location the new tenant informed the Parole officer that Petitioner no longer lived at that address.  Petitioner's Parole Officer testified that he then prepared "a last notice" letter and mailed it to Petitioner's last known address.  (Respondent's Exh. T).  The letter informed Petitioner that he was required to report or a warrant would be issued.  Petitioner neither responded to the letter nor returned to the probation office.  As a result, Petitioner's Parole Officer prepared the violation report and submitted the report to the Florida Parole Commission, with a recommendation that Petitioner's parole supervision be revoked.

Petitioner testified that in the fall of 1987, he went to the probation office where an unidentified female officer approved Petitioner's parole supervision transfer to Florida.  Petitioner further testified that this same person gave Petitioner permission to return to Florida, and told him to report in seven days.  According to Petitioner, he went to "Altamonte Springs and reported.  After a time no file was forwarded."  Petitioner further stated that he felt someone had misplaced his paperwork.

Petitioner also advanced the theory that his Parole Officer had informed him that his supervision was terminated.

Petitioner acknowledged that he had moved from his approved residence, and stopped reporting to his Parole Officer in North Carolina.  Petitioner also acknowledged that he left North Carolina in October 1987.

---

on July 17, 2003 (*see* Doc. 27, Ex. T at 16).  Although the state court opinion is inaccurate regarding what led to Petitioner's arrest on July 17, 2003, this inaccuracy does not affect the undersigned's analysis of whether there was sufficient evidence to convict Petitioner of a parole violation.

[2]The undersigned notes that Petitioner's parole officer actually went to Petitioner's approved residence to leave a "last call" notice in December 1987, not in December 1988 as indicated in the state court opinion.  The state court apparently relied on a scriveners's error in the record that indicated that the date was December 1988 (*see* Doc. 27, Ex. T. at 13).  The correct date is December 1987 (Petitioner admitted to leaving his approved residence in October 1987, and the parole violator warrant was issued on March 4, 1988) (*see id.* at 14, 16).

Case No: 4:05cv358/MMP/EMT

> At the conclusion of the hearing, the Parole Examiner found Petitioner guilty of the violations as charged in the warrant.
> . . . .
> The court further finds that the evidence established in this case supports the parole revocation based on the violations with which the Petitioner was charged. Petitioner's Parole Officer's testimony consisted of direct evidence of his observations and interactions with Petitioner. The testimony of a witness constitutes direct evidence, Perry v. State, 778 So. 2d 1072 (Fla. 5th DCA 2001), and a law enforcement officer's observations constitute direct evidence. Morris v. State, 727 So. 2d 975 (Fla. 5th DCA 1999). The Parole Officer's testimony provides competent evidence as to the violations. Ramon Hernandez v. State of Florida, 723 So. 2d 886, 887 (Fla. 4th DCA 1998); McKinney v. State, 624 So. 2d 373, 374 (Fla. 1st DCA 1993).
>
> Moreover, Petitioner's unsupported explanations for his conduct were not plausible. Petitioner claimed that an unidentified female officer authorized the transfer of his parole supervision to Florida, and then misplaced the paperwork. In the alternative, Petitioner claimed that his Parole Officer informed him that his supervision was terminated. The Parole Examiner properly exercised his discretion in believing the testimony of the Parole Officer over Petitioner's unsupported statements. It is entirely within the hearing examiner's discretion to believe or disbelieve the releasee's testimony. See McKinney v. State, 624 So. 2d 373, 374 (Fla. 1st DCA 1993); see also McPherson v. State, 530 So. 2d 1095 (Fla. 1st DCA 1988); Mobley v. State, 348 So. 2d 373 (Fla. 3d DCA 1977). The Court finds that the record contains competent substantial evidence to support the Parole FPC's order revoking Petitioner's parole supervision violation.

(Doc. 27, Ex. Y at 1–7).

The state court's determination that there was sufficient evidence to support the parole revocation was based upon its finding that the parole examiner did not abuse his discretion in determining that Arthur Williams's testimony was more credible than Petitioner's, and that Arthur Williams's testimony was sufficient to support the parole revocation. Upon review of the state court decision, the undersigned concluded that Petitioner failed to establish that the decision was contrary to or an unreasonable application of Supreme Court law, or that it was based upon an unreasonable determination of the facts; therefore, pursuant to 28 U.S.C. § 2254(d), Petitioner was not entitled to federal habeas relief (*id.* at 19–23).

Petitioner then filed the instant "Motion for Leave And/or Delay of Any Further Court's [sic] Decisions" (Doc. 62), in which he requests that this court stay disposition of this habeas action until

final disposition of a civil case he filed in the Superior Court of Mecklenburg County, North Carolina, against Mr. Williams and the North Carolina Department of Corrections (DOC) (*id.*, Ex. B; Doc. 80, attached Complaint for Extraordinary Relief and Declaratory Judgment). Petitioner filed the state court action in October of 2007, while this federal habeas action was pending (*see* Doc. 62 at 5; Doc. 80 at 1, 17). The subject matter of the civil complaint filed in North Carolina is that Arthur Williams, while acting under color of state law, denied Petitioner due process and equal protection, as guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, by threatening to seek violation of his parole for no reason in 1987, filing a false violation report in January of 1988, the same report which was the basis for the Florida Parole Commission's revoking Petitioner's parole in 2003, and testifying falsely at the Florida parole revocation hearing in 2003 (*see* Doc. 80 at 1–16, Exs. I, J, K, L, M, N).[3] The basis of Petitioner's claim against the North Carolina DOC is that the agency was Mr. Williams's supervisor and failed to intervene in Mr. Williams's allegedly unconstitutional conduct (*id.* at 15). As relief in the North Carolina civil case, Petitioner seeks a declaratory judgment and compensatory and punitive damages in the amount of $21,000,000.00 (*id.* at 16).

The only circumstances in which the United States Supreme Court has recognized the availability of a stay of the federal proceedings in a habeas cases is where a federal petition contains both exhausted and unexhausted claims and the district court determines there was good cause for the petitioner's failure to exhaust his claims first in the state court, and the unexhausted claims are not "plainly meritless." *See* Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005). In such cases, the Supreme Court held the district court should stay the federal habeas action to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then return to federal court for review of his perfected petition. *Id.*

In the instant case, Petitioner's amended habeas petition does not include any unexhausted claims; indeed, Petitioner stated in his verified amended petition that he exhausted all of his claims in the state courts (*see* Doc. 20 at 6–18), and the Commission conceded that all of the claims have

---

[3] The 2003 parole revocation is the subject of the instant habeas action.

been exhausted (*see* Doc. 27 at 24). Therefore, Petitioner has failed to show that this case is the type of case which qualifies for imposition of a stay.

Additionally, even if the court employed the ordinary principles governing stays in civil cases, that is, the standard for granting temporary relief, Petitioner has failed to demonstrate he qualifies for such relief. The purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. *See* Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994). The grant or denial of preliminary injunctive relief rests in the discretion of the district court. *See* Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). The district court, however, must exercise its discretion in light of whether:

1. There is a substantial likelihood that Plaintiff will prevail on the merits;

2. There exists a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted;

3. The threatened injury to Plaintiff outweighs the threatened harm injunction will do to the defendant; and

4. The granting of the preliminary injunction will not disserve the public interest.

*See* CBS Broadcasting, Inc. v. Echostar Communications Corp., 265 F.3d 1193, 1200 (11th Cir. 2001) (citation omitted); Carillon Importers, Ltd., 112 F.3d at 1126. "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." CBS Broadcasting, Inc., 265 F.3d at 1200 (citation omitted).

In the instant case, for the reasons set forth in the Report and Recommendation previously issued by the undersigned, Petitioner has failed to demonstrate a substantial likelihood of success on the merits on any of the claims raised in his amended petition (*see* Doc. 59). Furthermore, imposing a stay in this action would undermine the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that is to "further the principles of comity, finality, and federalism." *See* Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S. Ct. 1029, 154 L. Ed. 2d 913

(2003) (internal quotation marks omitted).  Therefore, Petitioner has failed to carry his burden of persuasion in establishing that he qualifies for preliminary injunctive relief.

Finally, it is worth noting that Petitioner's North Carolina civil case alleging that Mr. Williams and the North Carolina DOC deprived him of his constitutional rights while acting under color of state law, will likely be dismissed under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  In Heck, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87 (footnote omitted).  Indeed, a plaintiff cannot win relief under Section 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  Heck, 512 U.S. at 487; *see* Abella v. Rubino, 63 F.3d 1063, 1064–65 (11th Cir. 1995) (holding, in an action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), that plaintiff's argument that the defendants fabricated testimony was barred under Heck because "[j]udgment in favor of Abella on these claims would necessarily imply the invalidity of his conviction." (quotation omitted)).  As noted *supra*, a plaintiff may only proceed after showing "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486–87.  However, the plaintiff may proceed under Section 1983 when "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff . . . in the absence of some other bar to the suit."  *Id.* at 487; *see* Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (explaining that "an illegal search or arrest may be followed by a valid conviction, [and therefore] a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction.").

In the instant case, Petitioner's claims in the North Carolina civil rights case that Arthur Williams engaged in unconstitutional conduct which caused Petitioner's parole to be revoked, and the North Carolina DOC failed to intervene in the allegedly unconstitutional conduct, essentially seek to invalidate Petitioner's parole revocation and, as such, they are barred by Heck. The necessary implication of a grant of relief in Petitioner's favor in the North Carolina civil case would be that Petitioner's parole revocation would be rendered invalid because it was based upon the false report and false testimony of Mr. Williams, which Petitioner admits was the only evidence upon which the parole examiner relied in recommending revocation of Petitioner's parole (*see* Doc. 80 at 14–15, Ex. M). Therefore, Petitioner's state court claims are subject to dismissal.

For the aforementioned reasons, the undersigned concludes that the pendency of the civil case in North Carolina does not warrant a stay of this habeas action.

Accordingly, it is respectfully **RECOMMENDED**:

That Petitioner's "Motion for Leave And/or Delay of Any Further Court's [sic] Decisions" (Doc. 62), construed as a motion for stay, be **DENIED**.

At Pensacola, Florida, this 25th day of June 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**
**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**